IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TYLER JANNEY TRIPLETT,

        Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

        Defendant.

Case No. 6:15-cv-02011-TC

OPINION AND ORDER

COFFIN, Magistrate Judge:

    Plaintiff Tyler Triplett brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Title XVI Social Security Income and Title II Disability Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

On July 9, 2012, plaintiff applied for Social Security Income and Disability Insurance Benefits, alleging disability as of June 1, 2007. Tr. 20, 169-81. His applications were denied initially and upon reconsideration. Tr. 122-31, 138-44. On February 19, 2014, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 37-81. On March 20, 2014, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Social Security Act. Tr. 20-32. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## STATEMENT OF FACTS

Born on January 9, 1971, plaintiff was 36 years old on the alleged onset date and 43 years old at the time of the hearing. Tr. 30, 46, 122. Plaintiff left high school during the tenth grade but later obtained his GED; he also attended some community college. Tr. 74, 193, 312. He worked previously as a painter and carpenter. Tr. 75, 193. Plaintiff alleges disability due to depression, anxiety, hypertension, chronic obstructive pulmonary disease, possible diabetes, and back, knee, feet, shoulder, hand, and wrist pain. Tr. 192.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations

omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 22. At step two, the ALJ determined the following impairments were severe: "osteoarthritis – left knee; obesity; depression; and anxiety." Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 23.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that:

> he could frequently crouch and kneel, and he could occasionally climb and crawl; he would need to avoid concentrated exposure to vibration, dust, fumes, gases, poor ventilation, noxious odors, heights, moving machinery, and similar hazards; he would be limited to simple, repetitive, routine tasks requiring no more than occasional interaction with supervisors, co-workers, and the general public.

Tr. 26.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 30. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant

number of jobs in the national and local economy that plaintiff could perform despite his impairments, such as final assembler, packager/sealer, and addresser. Tr. 31.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) discrediting his subjective symptom statements; (2) rejecting medical opinion evidence from Gregory Cole, Ph.D.; and (3) failing to include all of his limitations in the RFC, thereby rendering the VE's testimony and the ALJ's step five finding invalid.

### I.   Plaintiff's Testimony

Plaintiff asserts the ALJ wrongfully discredited his subjective symptom testimony concerning the severity of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that he was unable to work due to left knee and back pain. Tr. 48. He also endorsed problems with his right knee, shoulders, wrists, feet, and ankles. Tr. 50-52. Nevertheless, plaintiff acknowledged that he had obtained "[v]irtually no [treatment] other than getting [a] bunch of prescribed pain medications . . . a couple of years ago" and, more recently, a cortisone shot in his left knee (after he became re-insured). Id. Due to his impairments, plaintiff stated: "I can't stand up long enough to do anything [or] sit for long periods of time." Tr. 53, 55, 63. Plaintiff's daily activities consisted of watching television, occasionally reading, and grocery shopping once per month. Tr. 53-54. He remarked that he otherwise does not do much or go anywhere. Tr. 53-70.

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his statements regarding the extent of these symptoms were not fully credible[1] due to his failure to seek treatment, report symptoms, and follow his providers' medical recommendations, as well as the lack of corroborating medical evidence. Tr. 27-30.

Notably, the ALJ found that plaintiff's hearing statements were belied by the medical record, which revealed that his physical impairments were not as significant as alleged. Tr. 28-29. Central to this determination was the fact that plaintiff did not report any mental health

---

[1] The Court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. See SSR 16-3p, available at 2016 WL 1119029 (superseding SSR 96-7p). The ALJ's decision was issued approximately two years before SSR 16-3p became effective and there is no binding precedent interpreting this new ruling or whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the ALJ's findings in regard to this issue pass muster irrespective of which standard governs, the Court need not resolve this issue.

symptoms or impairment associated with his wrists or shoulders, and his treatment consisted almost exclusively of various medication regimes. Id. "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008) (citations and internal quotations omitted). Likewise, an "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can undermine a claimant's credibility. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). In addition, an ALJ may consider a claimant's failure to report symptoms in making an adverse credibility finding. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

Substantial evidence supports the ALJ's conclusion in the case at bar. Although plaintiff's treatment records are scarce, he never described any problems associated with his wrists, shoulders, or mental functioning.[2] Tr. 265-328. Further, although he cites to a lack of resources, the medical record reflects that plaintiff was able to obtain at least some medical care when he wanted or believed he need it, and there is no indication that sought more aggressive treatment after becoming re-insured. Tr. 50-52, 59-60, 265-328. There is also no indication that plaintiff looked into low- or no-cost treatment options for his allegedly disabling physical or mental impairments.[3] See Tr. 64-65 (plaintiff testifying that he had discussed knee replacement

---

[2] Specifically, plaintiff mentioned left wrist pain for the first time in February 2014, but clarified that "[h]is primary pain and complaint right now is the knee." Tr. 322. Additionally, plaintiff did not report psychological symptoms to any medical provider outside of his December 2013 consultive examination with Dr. Cole. Compare Tr. 265-310, 321-28, with Tr. 311-20. Indeed, the sole reference to depression in the record before the Court was situationally related plaintiff's weight gain, which, in turn, exacerbated his knee pain. Tr. 291-92.

[3] To the extent plaintiff asserts that his failure to seek treatment is a facet of his underlying mental impairments, his argument is unpersuasive. See Pl.'s Opening Br. 14 ("[p]laintiff does not have a history of mental health treatment [because] he is not a good judge of the severity of

Page 7 - OPINION AND ORDER

surgery "a long time ago" but did not pursue that option because "I would have to lose a minimum of 150 pounds, and then get on some kind of list," to become eligible due to his lack of insurance).

Moreover, despite the fact that his treating providers repeatedly counseled him to lose weight and/or exercise, and quit smoking, plaintiff neglected to modify his behavior. Tr. 265-328. Instead, plaintiff merely sought narcotic pain medication.[4] See, e.g., Tr. 265-68, 278-79, 282, 290, 294, 308-10, 327-28; see also Tr. 295 (Nicholes Sexton, M.D., remarking in February 2014 that plaintiff "has not recently tried any modalities" of treatment). Plaintiff's providers repeatedly counseled against mixing alcohol and marijuana with opiates, but plaintiff did not seem interested in eliminating the use of these substances.[5] Tr. 294-95, 308-10, 327-28. As a result, at least one provider refused to treat plaintiff. See Tr. 328 (plaintiff immediately "le[ft] the room stating that he won't be back" after a doctor advised that "he is not a candidate for opiate treatment for his pain [due to] his alcoholism and having marijuana in his urine").

---

his own mental impairment"). Critically, plaintiff's treating and examining providers have uniformly observed that his judgment and insight were intact, with no auditory or visual hallucinations, or paranoid ideation. Tr. 265, 267, 273, 278, 291-92, 296, 313-14. In other words, nothing in the record reflects that plaintiff's depression or anxiety impacted his health care decisions.

[4] Plaintiff argues that drug-seeking behavior is not a proper basis for an adverse credibility finding absent evidence the claimant "exaggerated symptoms to obtain pain medication." Pl.'s Reply Br. 3-4. Plaintiff also implies that any drug-seeking was attributable to the fact that he "lacked the resources for ongoing care." Id. Aside from the fact that this is not an entirely accurate characterization of the record, the fact remains that "[d]rug seeking behavior is a well recognized reason to discount credibility." Koellman v. Astrue, 2010 WL 3269903, *7 (W.D. Wash. Aug. 16, 2010) (citing Edlund v. Massanari, 253 F.3d 1152, 1157-58 (9th Cir. 2001)).

[5] Plaintiff testified that he stopped smoking marijuana in December 2013 and did not drink more than "a couple of beers [in] the last couple of weeks." Tr. 56-58, 60. Yet, in January 2014, less than one month before the hearing, plaintiff reported to his treatment provider that he "drinks at least 12 beers per day" and "is an alcoholic"; he also reported that "[h]e uses marijuana for pain control" and his urine test came back positive for that substance. Tr. 327-28.

Page 8 - OPINION AND ORDER

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. As such, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008). The ALJ's evaluation of plaintiff's testimony is affirmed.

## II. Medical Opinion Evidence

Plaintiff argues the ALJ improperly discredited the opinion of Dr. Cole. There are three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

In December 2013, Dr. Cole completed a one-time psychodiagnoistic evaluation of plaintiff. Tr. 311-16. His assessment was based on clinical interview, the administration of certain tests, and the review of medical records relating to plaintiff's physical issues. Tr. 311. The narrative portion of Dr. Cole's report states in its entirety:

> Results of the current evaluation indicate that the client exhibits symptoms, which are consistent with the diagnoses of: an unspecified depressive disorder; an unspecified anxiety disorder; and an unspecified cannabis related disorder. It is evident that the client could benefit from follow-up psychological services/substance abuse treatment services, and behavioral modification management, considering his behavioral symptomatology. Results of this evaluation indicated that the client exhibited problems in the areas of attention and concentration. He also was noted to have slightly below average immediate memory capability, and his delayed memory ability was considered to be below average. The client was able to sustain simple routine tasks, and only mild

Page 9 - OPINION AND ORDER

problems completing a simple multiple-step task were observed. From the results of this evaluation, if the client pursues a vocational placement in the near future, then it is presumed that his: unstable gait, and problems with pain, would be the primary factors, which would impact his overall level of vocational success. In these areas, further medical evaluation is suggested to determine the client's specific physical limitations. If the client is to receive funds through his application for Disability, then it is suggested that he could manage such monies independently at this time with reservation noted concerning his continuing substance abuse. It can also be noted that results of the current evaluation are generally consistent with records available to this evaluator.

Tr. 315-16.

On a corresponding functional capacity form, Dr. Cole endorsed "marked" limitation in only one category: the ability to respond appropriately to usual work situations and to changes in routine work setting.[6] Tr. 318-19. The doctor indicated that his functional restrictions were based on his "Psychodiagnostic Eval[uation]," as well as plaintiff's "unstable gait [and] pain affecting stamina." Tr. 319.

The ALJ adopted Dr. Cole's opinion except the marked limitation, which was afforded "little weight" because it is "not supported by his own findings." Tr. 26, 30. The ALJ also noted that Dr. Cole's opinion may have been impacted by plaintiff's recent or remote drug use, or the fact that it "was performed for the purpose of determining benefits," as "the evidence does not include any other treatment or records pertaining to a mental impairment." Id.

Contradiction between a doctor's opinion and his treatment notes constitutes a legally sufficient reason to reject that opinion. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009); see also Downing v. Barnhart, 167 Fed.Appx. 652, 653 (9th Cir. 2006)

---

[6] This form defines "marked" as "serious limitation [and] a substantial loss in the ability to effectively function." Tr. 318. Dr. Cole also assessed some moderate restrictions; per the form, a moderately limited individual is "still able to function satisfactorily." Tr. 318. Accordingly, plaintiff does not now challenge the ALJ's decision except in regard to Dr. Cole's marked restriction. Pl.'s Opening Br. 9-12; Pl.'s Reply Br. 1-3.

("an ALJ may reject all or part of an examining physician's report if it contains inconsistencies") (citation omitted). Similarly, the ALJ may disregard "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957.

An independent review of Dr. Cole's examination notes confirms the absence of any self-reported limitations concerning responding appropriately to usual work situations and changes in routine. See Tr. 312 (plaintiff's sole remark regarding his vocational history to Dr. Cole: "his last job was held in approximately 2007 . . . [he] reports that he had problems with his coworkers and supervisor"). In fact, plaintiff informed Dr. Cole that he was unable to work exclusively for physical reasons. Tr. 313; see also Tr. 68 (plaintiff testifying that physical problems – i.e., "my wrist and shoulder" – prevented him from performing a sedentary job that required work at shoulder level or below, and minimal public contact).

Furthermore, Dr. Cole's objective findings do not support the existence of any marked restriction in this category. See Tr. 313-15 (Dr. Cole recording normal examination findings except in relation to plaintiff's attention and concentration, and immediate and delayed memory). Rather, Dr. Cole's opinion was premised largely upon plaintiff's physical impairments: in the narrative portion of his report, the only barrier to employment identified was plaintiff's "unstable gait, and problems with pain," and the accompanying functional capacity form was likewise based on plaintiff's "unstable gait [and] pain." Tr. 315, 319. However, Dr. Cole's expertise pertains to psychology, such that he is neither qualified nor chose to formally assess plaintiff's physical functioning. State agency consulting sources William Backlund, M.D., and Sharon Eder, M.D., reviewed the record in October 2012 and February 2013, respectively, and opined

that plaintiff was physically capable of performing work consistent with the RFC. Tr. 82-121; see also Smolen, 80 F.3d at 1290 ("the opinions of a specialist about medical issues related to his or her area of specialization are given more weight than the opinions of a nonspecialist"). Finally, as discussed above, plaintiff never disclosed any psychological symptoms throughout the nearly ten year adjudication period and he did not express an intent to obtain mental health treatment at the hearing, despite becoming re-insured. Tr. 68, 265-328.

In light of this evidence, the Court finds that the ALJ reasonably weighed Dr. Cole's report in formulating the RFC. See Morgan v. Comm'r of. Soc. Sec. Admin., 169 F.3d 595, 602-03 (9th Cir. 1999) (affirming the ALJ's rejection of medical opinion evidence under analogous circumstances). The ALJ's decision is affirmed as to this issue.

### III.    RFC and Step Five Finding

Plaintiff argues that the ALJ's RFC and step five finding are erroneous because they do not adequately account for his testimony or Dr. Cole's medical opinion. The RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As discussed herein, the ALJ appropriately weighed plaintiff's testimony and Dr. Cole's report. Outside of this evidence, there is no indication that plaintiff is unable to perform work

consistent with the RFC. Thus, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. Bayliss, 427 F.3d at 1217-18. The ALJ's RFC and step five finding are upheld.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 19 day of Sept 2016.

_____
Thomas M. Coffin
United States Magistrate Judge

Page 13 - OPINION AND ORDER